## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| MONA HENRY | ) | CASE NO. |
| 4921 Atwater Drive | ) | |
| Columbus, Ohio 43229, | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| CITY OF COLUMBUS, OHIO | ) | |
| 77 North Front Street | ) | **JURY DEMAND ENDORSED** |
| Columbus, Ohio 43125, | ) | **HEREIN** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff, Mona Henry, by and through undersigned counsel, as her Complaint against

Defendant City of Columbus, Ohio, states and avers the following:

### PARTIES, JURISDICTION, & VENUE

1. Henry is a resident of the city of Columbus, Franklin County, Ohio.

2. At all times herein, Henry was acting in the course and scope of her employment.

3. Defendant does business at 77 North Front Street, Columbus, Franklin County, Ohio 43125.

4. Defendant is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq.*

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Henry is alleging a Federal Law Claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").

6. All material events alleged in this Complaint occurred in Franklin County, Ohio.

7. This Court has supplemental jurisdiction over Henry's state law claims pursuant to 28 U.S.C. § 1367 as Henry's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Court pursuant 28 U.S.C. § 1391.

9. Within 300 days of the conduct alleged below, Henry filed a Charge of Retaliation with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2020-00383 against Defendant ("Henry EEOC Charge").

10. On or around October 6, 2020, the EEOC issued and mailed a Notice of Right to Sue letter to Henry regarding the Charge of Retaliation brought by Henry against Defendant in the Henry EEOC Charge.

11. Henry received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

12. Henry has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

13. Henry has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

### FACTS

14. Henry is a former employee of Defendant's Income Tax Division.

15. On or around October 22, 2018, Defendant hired Henry.

16. Defendant employed Henry as a business systems analyst.

17. Henry is Caucasian.

18. Most of Defendant's employees are Caucasian.

19. During Henry's employment with Defendant, all managers in Defendant's Tax Division were Caucasian.

20. During Henry's employment with Defendant, all supervisors in Defendant's Tax Division were Caucasian.

21. Henry worked closely with co-worker Smita Tripathy.

22. Tripathy is Indian American.

23. Tom Noorkah was Henry's Project Manager.

24. Noorkah is Caucasian.

25. Noorkah was also the Project Manager for Tripathy.

26. Noorkah treated Tripathy differently than similarly-situated employees.

27. Noorkah treated Tripathy unfavorably compared to similarly-situated Caucasian employees.

28. Henry observed Noorkah treating Tripathy differently than similarly-situated Caucasian employees.

29. Noorkah regularly shouted at Tripathy.

30. Noorkah regularly spoke to Tripathy in a demeaning manner.

31. Henry became uncomfortable with Noorkah's treatment toward Tripathy.

32. Noorkah's treatment of Tripathy created a hostile work environment.

33. In or around March 2019, there was a meeting with employees of Defendant's Tax Division's and a vendor ("First Incident").

34. Approximately 20 people were present for the First Incident.

35. Noorkah, Henry, and Tripathy were present for the First Incident.

36. During the First Incident, Tripathy asked a question.

37. During the First Incident, Noorkah responded, "Smita, that's not important. Let's move on to someone who has an actual question."

38. After the First Incident, Henry spoke with Pam Sonagere ("First Complaint").

39. Sonagere is a Human Resources Representative for Defendant.

40. Sonagere is Caucasian.

41. In the First Complaint, Henry reported Noorkah's discriminatory treatment of Tripathy.

42. In First Complaint, Henry reported that Noorkah treats Tripathy much worse than similarly-situated Caucasian employees.

43. In First Complaint, Henry reported Noorkah was engaging in racial discrimination toward Tripathy.

44. Sonagere dismissed Henry's First Complaint.

45. Sonagere took no action in response to Henry's First Complaint.

46. After First Complaint, Henry made several additional complaints to Sonagere regarding Noorkah's racial discrimination.

47. Sonagere took no action to remedy Noorkah's treatment of Tripathy.

48. On or around June 7, 2019, Noorkah lashed out at Tripathy on a conference call Henry was on ("Second Incident").

49. Tony Franks was on the conference call with Tripathy and Henry during the Second Incident.

50. Franks is Caucasian.

51. Franks is male.

52. In the Second Incident, Noorkah became angry and started yelling at Tripathy.

53. In the Second Incident, Tripathy began crying.

54. In the Second Incident, Tripathy left the conference call.

55. After the Second Incident, Brink and Darlene Wildes called Tripathy and Henry to Wildes' office.

56. Wildes is the Interim Tax Administrator for Defendant.

57. Wildes is Caucasian.

58. Brink and Wildes did not call Franks to Wildes' office after the Second Incident.

59. Wildes scolded Tripathy for leaving the conference call.

60. Henry spoke up and reported Noorkah's hostile and discriminatory treatment of Tripathy.

61. In response, Wildes began shouting at Henry.

62. Henry and Tripathy both left Wildes' office in tears.

63. Henry was a member of a union.

64. Henry belonged to Union CWA 4502.

65. On or around June 7, 2019, Henry contacted Jim Weber.

66. Weber was the Vice President of CWA 4502.

67. Henry reported the discrimination and retaliation to Weber ("Discrimination Reporting").

68. In the Discrimination Reporting, Henry reported Noorkah's discriminatory treatment of Tripathy.

69. In the Discrimination Reporting, Henry reported the retaliation against Henry and Tripathy for opposing the discrimination.

70. On or around June 10, 2019, Noorkah began an evaluation of Henry's job performance.

71. Other similarly-situated employees that did not oppose the discrimination were not given surprise performance evaluations.

72. On or around June 24, 2019, Sonagere and Noorkah informed Henry she would be terminated unless she resigned ("Termination").

73. In the alternative, Defendant constructively discharged Henry.

74. The Termination was an adverse action.

75. The Termination was an adverse employment action.

76. Henry asked why she would be terminated.

77. Sonagere told Henry that the reason for the Termination was "because you are not happy here" and that there were "cultural differences" between Defendant and Henry ("Termination Excuse").

78. The Termination Excuse was not the real reason for the Termination.

79. The Termination Excuse was not a sufficient basis to justify the Termination.

80. The Termination Excuse was pretextual.

81. Defendant has a progressive disciplinary policy ("Discipline Policy").

82. A verbal warning is the lowest level of discipline in the Discipline Policy.

83. Henry did not receive a verbal warning before the Termination.

84. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

85. Henry did not receive a written warning before the Termination.

86. A termination is the highest level of discipline in the Discipline Policy.

87. Defendant knowingly skipped progressive disciplinary steps in terminating Henry.

88. Defendant knowingly terminated Henry's employment.

89. Defendant knowingly took an adverse employment action against Henry.

90. Defendant knowingly took an adverse action against Henry.

91. Defendant intentionally skipped progressive disciplinary steps in terminating Henry.

92. Defendant intentionally terminated Henry's employment.

93. Defendant intentionally took an adverse employment action against Henry.

94. Defendant intentionally took an adverse action against Henry.

95. Defendant knew that skipping progressive disciplinary steps in terminating Henry would cause Henry harm, including economic harm.

96. Defendant knew that terminating Henry would cause Henry harm, including economic harm.

97. Defendant willfully skipped progressive disciplinary steps in terminating Henry.

98. Defendant willfully terminated Henry's employment.

99. Defendant willfully took an adverse employment action against Henry.

100. Defendant willfully took an adverse action against Henry.

101. On or around June 24, 2019, Defendant terminated Henry.

102. Alternatively, on or around June 24, 2019, Defendant constructively discharged Henry.

103. On or around June 24, 2019, Defendant terminated Henry's employment because of her opposition to discrimination.

104. As a direct and proximate result of Defendant's conduct, Henry suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## <u>COUNT I: RETALIATION IN VIOLATION OF TITLE VII</u>

105. Henry restates each and every prior paragraph of this complaint, as if it were fully restated herein.

106. On or around June 7, 2019, Noorkah lashed out at Tripathy on a conference call Henry was on ("Second Incident").

107. After the Second Incident, Brink and Wildes called Tripathy and Henry to Wildes' office.

108. Henry spoke up and reported Noorkah's hostile and discriminatory treatment of Tripathy.

109. In response to Henry's Second Complaint, Wildes began shouting at Henry.

110. On or around June 7, 2019, Henry reported the discrimination to her union Vice President.

111. On or around June 10, 2019, Noorkah began conducting an evaluation of Henry's job performance.

112. Other similarly-situated employees that did not oppose the discrimination were not given surprise performance evaluations.

113. On or around June 24, 2019, Sonagere and Noorkah informed Henry she would be terminated unless she resigned ("Termination").

114. On or around June 24, 2019, Defendant terminated Henry.

115. Alternatively, on or around June 24, 2019, Defendant constructively discharged Henry.

116. On or around June 24, 2019, Defendant terminated Henry's employment because of her opposition to discrimination.

117. As a result of Defendant's discriminatory conduct described above, Henry complained about the racial discrimination she was observing.

118. Subsequent to Henry's reporting of racial discrimination to her supervisor and employer, Henry was given a performance review.

119. Defendant's actions were retaliatory in nature based on Henry's opposition to the unlawful discriminatory conduct.

120. Pursuant to Title VII, it is an unlawful discriminatory practice to retaliate against an employee for opposing unlawful discrimination.

121. As a direct and proximate result of Defendant's conduct, Henry suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT II: RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

122. Henry restates each and every prior paragraph of this complaint, as if it were fully restated herein.

123. On or around June 7, 2019, Noorkah lashed out at Tripathy on a conference call Henry was on ("Second Incident").

124. After the Second Incident, Brink and Wildes called Tripathy and Henry to Wildes' office.

125. Henry spoke up and reported Noorkah's hostile and discriminatory treatment of Tripathy.

126. In response to Henry's Second Complaint, Wildes began shouting at Henry.

127. On or around June 7, 2019, Henry reported the discrimination to her union Vice President.

128. On or around June 10, 2019, Noorkah began conducting an evaluation of Henry's job performance.

129. Other similarly-situated employees that did not oppose the discrimination were not given surprise performance evaluations.

130. On or around June 24, 2019, Sonagere and Noorkah informed Henry she would be terminated unless she resigned ("Termination").

131. On or around June 24, 2019, Defendant terminated Henry.

132. Alternatively, on or around June 24, 2019, Defendant constructively discharged Henry.

133. On or around June 24, 2019, Defendant terminated Henry's employment because of her opposition to discrimination.

134. As a result of Defendant's discriminatory conduct described above, Henry complained about the racial discrimination she was observing.

135. Subsequent to Henry's reporting of racial discrimination to her supervisor and employer, Henry was given a performance review.

136. Defendant's actions were retaliatory in nature based on Henry's opposition to the unlawful discriminatory conduct.

137. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

138. As a direct and proximate result of Defendant's conduct, Henry suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Henry respectfully requests that this Honorable Court grant the following relief:

(a) Issue an order requiring Defendant retroactively to restore Henry to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against Defendant of compensatory and monetary damages to compensate Henry for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Henry's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)
**THE SPITZ LAW FIRM, LLC**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax:     (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
Email: paul.filippelli@spitzlawfirm.com
*Attorneys for Plaintiff Mona Henry*

## JURY DEMAND

Plaintiff Henry demands a trial by jury by the maximum number of jurors permitted.

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)